TRIAD BANK, PLAINTIFF v. JAMES E. ELLIOTT, DEFENDANT

No. 9018SC397

(Filed 18 December 1990)

**1. Chattel Mortgages and Conditional Sales § 16 (NCI3d) — automobile purchase — default — summary judgment for plaintiff proper**

The trial court did not err by granting plaintiff's motion for summary judgment on the issue of default in an action for a deficiency judgment on purchase notes for a Rolls Royce and a Bentley where defendant conceded that he made no payments after September of 1987 on either note and the discrepancy in the sum listed as interest did not rise to the level of a disputed material fact.

**Am Jur 2d, Secured Transactions § 637.**

**2. Uniform Commercial Code § 46 (NCI3d) — automobile purchase note — default — commercially reasonable sale**

Summary judgment was properly granted for plaintiff on the issue of commercially reasonable sale in an action for a deficiency judgment on purchase notes for a Rolls Royce and a Bentley where defendant acknowledged that the address used by plaintiff is the correct one and that he does not recall informing plaintiff of any other; a ten-day redemption period not required by statute but mentioned in plaintiff's letter was provided; it is difficult to see how defendant could have been misled by the redemption period since he contends he never received the letter; the notice described the vehicle substantially as it was described in the security agreement; and the difference of one year in make, which may have been a clerical error, was not a substantial deviation. N.C.G.S. § 25-9-601.

TRIAD BANK v. ELLIOTT

[101 N.C. App. 188 (1990)]

Am Jur 2d, Secured Transactions §§ 612, 614, 619, 620, 639.

Uniform Commercial Code: failure of secured creditor to give required notice of disposition of collateral as bar to deficiency judgment. 59 ALR3d 401.

APPEAL by defendant from judgment entered 31 January 1990 in GUILFORD County Superior Court by *Judge Russell G. Walker*. Heard in the Court of Appeals 25 October 1990.

*Turner, Enochs, Sparrow, Boone & Falk, P.A., and Peter Chastain, for plaintiff-appellee.*

*J. Sam Johnson, Jr., for defendant-appellant.*

DUNCAN, Judge.

On 25 April 1986, James E. Elliott ("defendant") executed and delivered to Triad Bank ("plaintiff") a promissory note and security agreement for $35,756.59 secured by a 1976 Rolls Royce automobile. On 6 May 1986, defendant executed another promissory note and security agreement with plaintiff for $43,793.06 secured by a 1981 Bentley automobile. The proceeds of the notes were used for the purchase of the automobiles. The first note on the Rolls Royce is an installment note requiring 24 equal monthly payments of $600.00 each plus interest. The first payment was due on 25 May 1986. The second note on the Bentley was also an installment note payable in 36 monthly installments of $600.00 each plus interest beginning 15 June 1986.

Defendant undertook repairs to both vehicles to make them suitable for resale. He received verbal permission from one of plaintiff's financing officers to take the cars to Florida for that purpose. While the cars were in Florida plaintiff began to debit defendant's accounts to make payments on the two automobile loans. Defendant had authorized plaintiff's officers to debit his checking account for missed or late loan payments. However, plaintiff also began to debit several other accounts, including a corporate account and a joint account with defendant's daughter. As a result of the debits, defendant received checks which he had written to other parties and which were returned for insufficient funds. Defendant complained to Karen Dillard, one of plaintiff's branch managers. Ms. Dillard agreed to immediately look into the matter, put the money

**TRIAD BANK v. ELLIOTT**

[101 N.C. App. 188 (1990)]

back in appropriate accounts, refund any service charges that resulted from the returned checks, and to write a letter of apology to each party that had received a check covered by insufficient funds. Defendant did not withdraw his authorization from plaintiff to debit his personal account for missed loan payments. Shortly thereafter, Ms. Dillard contacted Mr. Elliott and requested that he return the automobiles to North Carolina.

On 20 October 1987, plaintiff notified defendant that it was calling both loans due because of his failure to return the automobiles to North Carolina. On 22 January 1988, plaintiff and defendant negotiated a change in the security agreement, by which defendant agreed to return the automobiles to North Carolina, and plaintiff agreed to forbear in its collection effort for a period of ninety days during which the automobiles were to be listed for sale. The automobiles were not sold during that period, and on 2 May 1988, plaintiff repossessed both of them. On 6 May 1988 plaintiff wrote defendant informing him that it had repossessed the automobiles because he was in default in his payments, and that he could redeem the cars by paying the outstanding balance of $43,614.55 for the first note, and $33,493.20 for the second note. The letter enclosed two notices of sale, and stated that the cars would be sold at public auction under the terms of the notices. The letter and the notices of sale were sent to a post office box address in Greensboro, North Carolina, which defendant acknowledges was correct at the time and, in fact, still was correct at the time of discovery.

On 16 May 1988 the automobiles were sold at public auction. The Rolls Royce was sold to the Glynn Collection for $19,000.00. The Bentley was also sold to the Glynn Collection for $28,000.00. After applying the funds received from the sale to the collection and sale expenses and the outstanding balances on the notes, deficiencies remained as to both vehicles. The outstanding balance on the first note is $19,573.57, plus interest. The outstanding balance for the second note is $20,142.70, plus interest.

On 14 July 1988 plaintiff filed a complaint seeking a deficiency judgment on both notes. The defendant denied the indebtedness, asserting the defenses of breach of contract, violation of statutory sale requirements, and stating a counterclaim for negligence and intentional misconduct. The trial court granted plaintiff's motion for summary judgment. Defendant appeals.

TRIAD BANK v. ELLIOTT

[101 N.C. App. 188 (1990)]

## I

The question presented is whether the trial court erred in granting plaintiff's motion for summary judgment. In general, summary judgment is appropriate when the pleadings, answers to interrogatories, affidavits and admissions show that no material issue of fact exists and the movant is entitled to summary judgment as a matter of law. *Durham v. Vine*, 40 N.C. App. 564, 566, 253 S.E.2d 316, 318 (1979).

In order for the plaintiff to prevail, it must establish the absence of any material issue of fact, either by showing the nonexistence of an essential element of the defendant's cause of action, or by showing that defendant cannot provide evidence to support an essential element of his claim. *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E.2d 795 (1974). In considering a motion for summary judgment, all pleadings and other information must be viewed in the light most favorable to the nonmoving party. *Dickerson, Inc. v. Board of Transp.*, 26 N.C. App. 319, 215 S.E.2d 870 (1975).

## II

[1] Defendant argues preliminarily that the trial court erred in granting summary judgment because there was a genuine issue of material fact as to whether he was actually in default on his loan payments, and if so, by how much. This argument is meritless. Defendant in fact conceded in a deposition that he made no payments to plaintiff after September of 1987 on either note. With respect to the amount, defendant claims that there is a discrepancy between the amount prayed for in the complaint and the amount awarded in the judgment. However, the amount awarded in the judgment ($39,716.27) is the same as the sum of the principals of the two notes ($19,573.57 in the first note, plus $20,142.70 in the second note). The only difference is in the sums listed as interest, which would obviously vary with time. This discrepancy, if indeed there is one, does not rise to the level of a disputed material fact.

## III

[2] The primary issue raised by defendant is whether the plaintiff's sale of the two vehicles in question was commercially reasonable. For the following reasons, we hold that the granting of summary judgment in this case was proper.

N.C. Gen. Stat. § 25-9-601 governs the disposition of collateral by public sale, and provides as follows:

> Disposition of collateral by public proceedings as permitted by G.S. 25-9-504 may be made in accordance with the provisions of this part. The provisions of this part are not mandatory for disposition by public proceedings, but any disposition of the collateral by public sale wherein the secured party has substantially complied with the procedures provided in this part shall conclusively be deemed to be commercially reasonable in all respects.

Thus, the statute creates the presumption that substantial compliance with its terms constitutes a commercially reasonable sale. In fact, this court has held that absent special circumstances that do not exist here, a showing by the secured party that the contents of the notice of the sale were substantially in accord with N.C. Gen. Stat. § 25-9-602, that the notice of sale was posted and mailed substantially in accord with N.C. Gen. Stat. § 25-9-603, and that a public sale was held in accordance with the notice of sale, makes a prima facie showing of substantial compliance with the statutory requirements. *Wachovia Bank and Trust Co., N.A. v. Murphy*, 36 N.C. App. 760, 245 S.E.2d 101, *disc. review denied and appeal dismissed*, 295 N.C. 557, 248 S.E.2d 734 (1978).

Defendant makes several specific objections to the commercial reasonableness of the public sale procedure:

> 1. that he never received the plaintiff's letter or the notices of sale;

> 2. that the plaintiff's letter assured him of the right to redeem within ten days, but plaintiff conducted the sale on the tenth day; and

> 3. that the notice inaccurately described the collateral.

Each of these objections will be considered in turn.

With respect to the letter defendant now contends that plaintiff knew that he was staying in Charleston, South Carolina, and that he did not receive the notices because they were sent to an old post office box. However, in his deposition testimony defendant conceded that the post office box address was a correct one, and that it was in fact correct even at the time the deposition was taken. He further conceded that he could not recall whether he had ever given plaintiff a South Carolina address. N.C. Gen.

## TRIAD BANK v. ELLIOTT

[101 N.C. App. 188 (1990)]

Stat. § 25-9-603(2) sets out the requirements for the mailing of the notice of sale, and provides that the party holding the sale send notice to the debtor:

> (a) at the actual address of the debtors, if known to the secured party, or

> (b) at the address, if any, furnished the secured party, in writing, by the debtors, or otherwise at the last known address.

Here, defendant acknowledges not only that the address used by plaintiff is the correct one, but also that he does not recall informing them of any other. This argument is without merit.

Defendant argues that even though the plaintiff's letter assured him of the right to redeem the vehicles within ten days, the plaintiff conducted the sale on the tenth day. First it should be noted that the ten day redemption period defendant refers to is not provided by statute. It was merely mentioned in plaintiff's letter, which read, in pertinent part, as follows:

> You may redeem these vehicles by paying the unpaid "Outstanding balance" of $43,614.55 for #11742-02 and $33,493.20 for #11742-03 plus all costs incurred for said repossession and storage of the vehicle within ten (10) days of the date of this letter.

The letter was dated 6 May 1988 and the sale was conducted on 16 May 1988. It appears that the plaintiff provided exactly what it promised—a ten day period between the date of the letter and the date of the sale within which defendant could redeem the collateral. Plaintiff did not agree to provide more; the statute does not require that. In any event, since defendant contends that he never received the letter or the notices, it is difficult to see how he could have been misled.

The defendant next argues that plaintiff advertised the wrong collateral, in that it described the vehicle covered by the first note as a 1977 Rolls Royce, when it was in fact a 1976 Rolls Royce. In all other respects, the description was correct. N.C. Gen. Stat. § 25-9-602(c) requires that the notice of sale shall do as follows:

> (c) describe personal property to be sold substantially as it is described in the security agreement pursuant to which the power of sale is being exercised, and may add such further

description as will acquaint bidders with the nature of the property.

We hold that the notice described the vehicle substantially as it was described in the security agreement, and that the difference of the one year in make, which may well have been a clerical error, is not a substantial deviation.

Based on the foregoing discussion, we hold that the plaintiff has substantially complied with the procedures set out in N.C. Gen. Stat. § 25-9-601, and that the sale shall be deemed to be commercially reasonable in all respects as a matter of law. *See generally Murphy, supra.*

Our holding, however, does not completely dispose of this appeal. As the defendant points out, the trial judge failed to rule expressly on the defendant's counterclaims. While we believe the trial judge was correct in granting summary judgment in favor of the plaintiff on its claim, there has been no final determination on the merits of the defendant's counterclaim. We must therefore remand this case so that the trial court may completely dispose of all issues presented by this case.

IV

Accordingly, the judgment appealed from is

Affirmed in part, and remanded.

Judges ORR and GREENE concur.